**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**In re Estate of Joe C. Simmons**

**No. 17-0560 (Greenbrier County 16-AA-06(D))**

**FILED**

**April 16, 2019**

**released at 3:00 p.m.**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**MEMORANDUM DECISION**

Watha Wakando Simmons and Joe C. Simmons were married for approximately seventy years when Mrs. Simmons filed for divorce in 2008. Mrs. Simmons died in April of 2009 before the divorce was finalized, so the Family Court dismissed the divorce action. Mr. Simmons then died in 2015. Petitioner Carol C. Pope[1] filed two creditor's claims against his estate, one on her own behalf and one as executrix of Mrs. Simmons's estate. The Greenbrier County Commission denied Ms. Pope's personal claim outright. It denied the estate's claim, as well, except for a small sum for Mrs. Simmons's interest in the couple's jointly-owned household goods and furnishings. Ms. Pope appealed the County Commission's resolution of both claims, and the circuit court affirmed the County Commission's order. This appeal followed.

Ms. Pope argues that the lower courts erred in denying her two creditor claims against Mr. Simmons's estate because: (1) the objections to her claims filed by Respondent Kyle P. Simmons, executor of the estate of Mr. Simmons,[2] were not valid "counter affidavits," as required by West Virginia Code § 44-2-6 (2014); (2) the estate of Mrs. Simmons was entitled to equitable distribution of the Simmons's marital estate under West Virginia Code § 48-1-233 (2015); and (3) Ms. Pope was not barred from seeking reimbursement from Mr. Simmons for settlement and mediation costs of an earlier litigation, undertaken on Mrs. Simmons's behalf.

Upon consideration of the standard of review, the briefs, the record presented, and oral argument,[3] the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the order of the circuit court is appropriate under Rule 21 of the West Virginia Rules of Appellate Procedure.

---

[1] Ms. Pope is represented by Robert P. Martin, Esq.

[2] Kyle Simmons is represented by Christine Stump, Esq.

[3] Counsel for Kyle Simmons did not participate in oral argument.

## I. Factual and Procedural Background

We begin with a discussion of Mr. and Mrs. Simmons's divorce proceeding. Mrs. Simmons sued Mr. Simmons for divorce in the Family Court of Greenbrier County in November of 2008. On January 30, 2009, the family court entered a temporary order that required that "[a]ll marital property be placed into a constructive trust." Mrs. Simmons died approximately three weeks later, on February 22, 2009. Two months later, Ms. Pope sought to be named a party to the divorce action. The family court denied Ms. Pope's request and found that Mrs. Simmons's death required the dismissal of the divorce action. Ms. Pope appealed that dismissal order to the circuit court, which denied her appeal in April of 2010. This Court refused Ms. Pope's appeal later that year.[4]

Mrs. Simmons left the couple's marital home before filing for divorce in 2008, and eventually moved into a nursing home. After she died in 2009, Shenandoah Manor, the owner of the nursing home where Mrs. Simmons had lived, filed a civil action against Mr. Simmons and Ms. Pope, seeking payment of $23,140 owed for Mrs. Simmons's care. Ms. Pope filed a cross-claim against Mr. Simmons requesting judgment against him for payment of all claims, alleging that he had agreed to pay Mrs. Simmons's bill as part of the divorce action. The parties mediated, and it is undisputed in the record that Ms. Pope paid Shenandoah Manor and the mediator $7,600 to settle the case.[5] The circuit court then dismissed the matter with prejudice—including Ms. Pope's cross-claim—by order entered on February 7, 2013.

Mr. Simmons died on April 23, 2015. Six days later, Kyle Simmons was appointed executor of his father's estate and Mr. Simmons's will was presented and admitted to probate. In October of 2015, Ms. Pope, individually and as executrix of the estate of Mrs. Simmons, filed two creditor's claims against Mr. Simmons's estate. First, Ms. Pope claimed that she was entitled to reimbursement in the amount of $7,600 for payments she made to settle the Shenandoah Manor litigation. Second, she claimed that Mrs. Simmons's estate was entitled to the value of one-half of all real and personal property owned or possessed by Mr. and Mrs. Simmons as of February 22, 2009, when Mrs. Simmons died.[6]

---

[4] West Virginia Rule of Appellate Procedure 5(h) was amended effective December 1, 2010 to provide that properly prepared appeals from a circuit court's final judgment or other appealable order in a civil or criminal case will be reviewed on the merits, except for the limited circumstances provided for in Rule 5(h)(3). Before that amendment, appeals to this Court were granted at our discretion.

[5] Mr. Simmons also paid Shenandoah Manor $7,000.

[6] Ms. Pope also claimed on behalf of Mrs. Simmons's estate interest and income from the personal property from February 22, 2009, to the present.

In November of 2015, Kyle Simmons filed objections to both of Ms. Pope's creditor's claims. These objections were signed by his counsel. While those objections were not verified, the circuit court's order affirming the County Commissioner refers to "two copies of verifications to the objections." The estate was referred to a fiduciary commissioner for settlement of claims and a hearing was conducted on April 25, 2016. The fiduciary commissioner issued her report and recommendation in August 2016.

After conducting a hearing on August 24, 2016, the County Commission accepted the fiduciary commissioner's recommendation on September 7, 2016. The County Commission's final order denied both of Ms. Pope's claims, except that it granted the estate of Mrs. Simmons one-half the value of the household goods and furnishings jointly owned by Mr. and Mrs. Simmons, which totaled $4,481.04. Finding that Ms. Pope previously received household goods and furnishings valued at $1,971, the County Commission ruled that Mrs. Simmons's estate was entitled to $269.52 as the estate's remaining share of one-half of the value of the household goods and furnishings (($4,481.04 ÷ 2) - $1,971).

In September of 2016, Ms. Pope appealed the County Commission's order to the circuit court. The circuit court rejected Ms. Pope's contention that Kyle Simmons's objections to the creditor's claims were defective because they were not verified when filed and ruled that "there is no requirement that a counter affidavit filed in response to a properly filed claim against the estate of a decedent be verified," citing both the plain language of West Virginia Code §§ 44-2-5 and -6 and this Court's decisions in *In re Estate of Hardin*[7] and *In re the Estate of McIntosh*.[8] The circuit court also noted that the record included two copies of general verifications to objections, which were filed before the hearing held by the fiduciary commissioner.

As for Ms. Pope's argument that the estate of Mrs. Simmons was entitled to one-half of the marital estate at the time of her death according to West Virginia Code § 48-1-233, the circuit court concluded that "equitable distribution of marital property as discussed in West Virginia Code Chapter [48] governing domestic relations . . . is irrelevant." The circuit court cited our earlier decisions in *Bridgeman v. Bridgeman*,[9] and *Zikos v. Clark*,[10] where we found that the property rights of parties who were granted a divorce before death were enforceable, and distinguished this case from *Bridgeman* and *Zikos* on the grounds that the divorce abated when Mrs. Simmons died.

---

[7] 158 W. Va. 614, 212 S.E.2d 750 (1975).

[8] 144 W. Va. 583, 109 S.E.2d 153 (1959).

[9] 182 W. Va. 677, 391 S.E.2d 367 (1990).

[10] 214 W. Va. 235, 588 S.E.2d 400 (2003).

Regarding Ms. Pope's claim for reimbursement of the payments she made to settle the Shenandoah Manor matter, the circuit court found that Ms. Pope was barred by collateral estoppel from seeking recovery against Mr. Simmons's estate, since that issue was finally adjudicated in 2013. And, the circuit court found that the fiduciary commissioner followed the proper procedure in determining ownership of the property at issue. The circuit court noted that Ms. Pope failed to cite to any authority to support her contention that the constructive trust from the divorce action survived the dismissal of that action, or to counter the County Commission's finding that equitable distribution under the domestic relations statute was not applicable to her claim. Finally, the circuit court rejected Ms. Pope's claim that Mr. Simmons's estate was unjustly enriched.

## II.    Standard of Review

This Court reviews the circuit court's final order and ultimate disposition under an abuse of discretion standard. We review challenges to findings of fact under a clearly erroneous standard; conclusions of law are reviewed de novo.[11]

## III.    Discussion

On appeal, Ms. Pope challenges the circuit court's rejection or denial of (1) her arguments regarding the alleged procedural defects in Kyle Simmons's counter-affidavit, filed in opposition to Ms. Pope's claims on Mr. Simmons's estate; (2) her claim on Mr. Simmons's estate on behalf of Mrs. Simmons's estate; and (3) her claim on Mr. Simmons's

---

[11] Syl. Pt. 1, *Haines v. Kimble*, 221 W. Va. 266, 654 S.E.2d 588 (2007) (affirming circuit court order upholding county commission's order that, inter alia, denied petition to remove executrix).

estate on her own behalf. We first address Ms. Pope's procedural argument—that Kyle Simmons's counter-affidavit was defective under West Virginia Code §§ 44-2-5[12] and -6.[13]

---

[12] West Virginia Code § 44-2-5 provides:

> Every claim against the estate of a decedent shall be itemized, verified by affidavit, accompanied by proper vouchers and shall state the character of the claim, whether open account, note, bond, bill, writing obligatory, judgment, decree or other evidence of debt and the amount thereof and from what date and on what items interest runs and at what percent per annum and stating further that the claim is just and true and that the creditor, or any prior owner of the claim, if there was one, has not received any part of the money stated to be due or any security or satisfaction for the same, except what is credited. The voucher for a judgment or decree shall be an abstract thereof; for a specialty, bond, note, bill of exchange, writing obligatory or other instrument, shall be the instrument itself, or a true copy thereof, or proof of the same in case the instrument be lost; and for an open account, an itemized copy of the account. This section does not apply to taxes.

[13] West Virginia Code § 44-2-6 provides:

> Every claim so itemized, so accompanied by proper vouchers, and so verified, shall be taken to be proved, and shall be allowed, unless before the commissioner shall make up his report of claims the personal representative or a distributee, or a legatee, or, in the case of estates that appear to be insolvent, a creditor, shall file before the commissioner *a counter affidavit, denying the claim in whole or in part*; and when said counter affidavit is so filed the commissioner shall fix a time and place for hearing evidence for and against such claim and give reasonable notice of such time and place to the claimant, the party objecting, and the personal representative. If the commissioner, having held such hearing, does not allow any such claim, the claimant shall pay the expense of having the testimony adduced at such hearing recorded and/or transcribed. The commissioner, in the exercise of his sound discretion, may require that the claimant post a bond or other security sufficient to pay the estimated cost of having such testimony recorded and transcribed as a condition precedent to holding such

Ms. Pope offers the same arguments to this Court as she did to the lower courts regarding the alleged procedural faults in Kyle Simmons's objections. For much the same reasons as the circuit court, we reject those arguments.

As an initial matter, Kyle Simmons correctly observes that Ms. Pope did not argue the alleged lack of verification during the hearing before the fiduciary commissioner. So, the circuit court improperly went outside of the record in addressing this argument.[14] For that reason alone, Ms. Pope's first assignment of error fails.

Even if she had properly argued and preserved the issue for appellate review, Ms. Pope's argument still falls short. It appears from the circuit court's order that Kyle Simmons filed verifications before the hearing before the fiduciary commissioner. In sum, Ms. Pope has not shown any error in the circuit court's rejection of her procedural argument.

We next turn to Ms. Pope's claim that she, as executrix of Mrs. Simmons's estate, is entitled to half the value of the Simmons's marital estate which existed at the time of Mrs. Simmons's death. Again, the circuit court correctly affirmed the County Commission's denial of this claim. Ms. Pope urges the Court to apply West Virginia Code § 48-1-233,[15] asserting that the claim she filed on behalf of the estate of Mrs. Simmons was

> hearing. If such claim, having been disallowed by the commissioner, subsequently shall be allowed as a claim against the estate, the claimant shall be entitled to recover from the estate the expenses so paid. Claims for funeral expenses shall be made and determined in the same manner as any other claims.

(Emphasis added).

[14] Under West Virginia Code § 44-2-19 (2014), the appeal of an order of the county commission shall be "tried and heard in the circuit court. . .on the record made before the fiduciary commissioner and on order of the county commission." *See Haines v. Kimble,* 221 W. Va. at 275, 654 S.E.2d at 597 (when reviewing an order from county commission, circuit court is limited to hearing determining and deciding appeal upon original record of proceeding before county commission.).

[15] West Virginia Code § 48-1-233 (2015) provides, in pertinent part:

> The definitions of "marital property" contained in this section has no application outside of the provisions of this article, and the common law as to the ownership of the respective property and earnings of a husband and wife, as altered by the provisions of article 29 of this chapter and other provisions of this code,

6

specifically filed "for the enforcement of rights under this article," that is Article 1 ("General Provisions; Definitions") of Chapter 48 ("Domestic Relations") of the West Virginia Code. But that cannot be so because Mr. and Mrs. Simmons were never granted a divorce. As the circuit court reasoned,

> [t]he divorce action was dismissed and abated following the death of [Mrs. Simmons] by an Order of the Family Court Judge dated April 28, 2009. . . . At the time of [Mr. Simmons's] death, he was a widower, therefore consideration of equitable distribution of marital property as discussed in West Virginia Code § 48-1-233 is not proper as that section of the Code "has no application outside the provisions of this article . . . except . . . for the enforcement of rights under this article."

In short, Mr. and Mrs. Simmons's divorce had not been granted when Mrs. Simmons died in 2009. Following Mr. Simmons's death in 2015, Mrs. Simmons's estate was not, and could not have been, entitled to use the mechanism of equitable distribution to claim one-half of the Simmons's marital estate (as valued as of the date of Mrs. Simmons's death) because there was no "judgment of annulment, divorce or separation" entered in this matter.[16] So, we find no error in the circuit court's affirmance of the County Commission's denial of Ms. Pope's claim on Mr. Simmons's estate for one-half the value of the marital estate, as of the date of Mrs. Simmons's death.

Ms. Pope also asserts that the circuit court erred by failing to recognize and apply any equitable principles of domestic relations or other law with regard to the equitable property interest of Mrs. Simmons in the marital estate.[17] Ms. Pope claims that Mr.

---

> are not abrogated by implication or otherwise, except as expressly provided for by the provisions of this article as such provisions are applied in actions brought under this article or for the enforcement of rights under this article.

[16] W. Va. Code § 48-7-101 (2015) ("Except as otherwise provided in this section, upon every *judgment of annulment, divorce or separation*, the court shall divide the marital property of the parties equally between the parties.") (emphasis added). Petitioner also argues that the determination of the marital property of the parties and, thus, the equitable distribution interests of Mrs. Simmons were established on November 3, 2008, the date the divorce proceeding was initiated. That argument fails under § 48-7-101 for the same reason. Indisputably, the family court never entered a "judgment or annulment, divorce or separation" in the 2008–09 divorce proceeding.

[17] Ms. Pope identifies this argument as her third assignment of error. We agree with Kyle Simmons that it is a repackaging of her second assignment of error, that is, the alleged

Simmons committed some form of wrongdoing and unjustly enriched himself by disposing of assets of the alleged marital estate following Mrs. Simmons's death. She also argues that, following Mr. Simmons's death, the circuit court should have imposed a constructive trust on the marital assets that remained in Mr. Simmons's estate under *Patterson v. Patterson.*[18]

As the circuit court found, there is no evidence to support Ms. Pope's claims against Mr. Simmons or Kyle Simmons of unjust enrichment. In her testimony before the fiduciary commissioner, Ms. Pope did not present any proof that Mr. Simmons converted any of Mrs. Simmons's assets. Additionally, Kyle Simmons testified that, as the executor of Mr. Simmons's estate, he did not sell any property that was owned solely by Mrs. Simmons. The fiduciary commissioner's report and recommendations contained detailed findings as to the ownership interests of the parties based on the evidence presented at the hearing. Other than vague references to applying the principles of equitable distribution as set forth in § 48-1-233, Ms. Pope does not provide any citation to the record or argument that those findings at issue were not supported by the evidence. For those reasons, we find no error in the circuit court's rejection of this argument.

Finally, Ms. Pope challenges the circuit court's ruling that the 2013 settlement with Shenandoah Manor nursing home, in which she agreed to pay $7,600, and Mr. Simmons agreed to pay $7,000, bars her 2015 creditor claim for $7,600 against Mr. Simmons's estate.

Again, we find no error in the circuit court's ruling that Ms. Pope is barred from attempting in 2015 to collect from Mr. Simmons's estate the exact amount sought in her 2013 cross-claim. Ms. Pope and Mr. Simmons settled Shenandoah Manor's claims against them at mediation. That settlement included Ms. Pope's cross-claim requesting judgment against Mr. Simmons for payment of all Shenandoah Manor's claims. At the parties' request, the circuit court dismissed Shenandoah Manor's claims and Ms. Pope's cross-claim with prejudice. Ms. Pope's 2015 creditor's claim is identical to the cross-claim dismissed with prejudice in 2013, and lodged against a party in privity to Mr. Simmons, that is Mr. Simmons's estate. Thus, the circuit court correctly concluded that the 2013 voluntary dismissal with prejudice bars Ms. Pope's 2015 creditor claim against Mr. Simmons's estate.[19]

---

failure of the lower courts to apply West Virginia § 48-1-233 and the principles of equitable distribution to her claim, on behalf of Mrs. Simmons's estate, on Mr. Simmons's estate, and so address Ms. Pope's second and third assignments of error together.

[18] 167 W. Va. 1, 277 S.E.2d 709 (1981).

[19] *Dan Ryan Builders, Inc. v. Crystal Ridge Dev., Inc.*, 239 W. Va. 549, 560–61, 803 S.E.2d 519, 530–31 (2017) ("'The voluntary dismissal of the complaint does not preserve or

For these reasons, we affirm the May 23, 2017 order of the Circuit Court of Greenbrier County denying Petitioner Carol C. Pope's appeal from the September 7, 2016 order of the Greenbrier County Commission.

Affirmed.

ISSUED: April 16, 2019

CONCURRED IN BY:

Chief Justice Elizabeth D. Walker
Justice Margaret L. Workman
Justice Tim Armstead
Justice Evan H. Jenkins
Justice John A. Hutchison

---

withhold it from the doctrine of res judicata; indeed, one of the underlying rationales for the doctrine is to prevent this type of *ad infinitum* claim splitting and piecemeal litigation.'") (quoting *Canterbury v. J.P. Morgan Acquisition Corp.*, 958 F. Supp. 2d 637, 648 (W.D. Va. 2013), *aff'd sub nom. Canterbury v. J.P. Morgan Mortg. Acquisition Corp.*, 561 F. App'x 293 (4th Cir. 2014)).